## GEORGE H. MARSH *vs.* GEORGE E. BOYDEN.

### MARCH 15, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(*1*)  *Law of the Road.  Motor Vehicles.  Passing Electric Car.*

The driver of a motor vehicle is not required either by the law of the road (Gen. Laws, 1909, cap. 87, § 1), or the law prescribing the duty of operators of motor vehicles (Gen. Laws, 1909, cap. 86, § 12), in approaching from the rear to pass to the left of an electric car from which a passenger has alighted, for if the law of the road has any application, it must be with reference to the car or the people thereon, and where plaintiff who had left the car and was crossing to the sidewalk was injured by defendant who passed the car on the right, there being no interference or collision with the car, plaintiff was not injured in consequence of the neglect of any duty which defendant owed the car or its occupants.

(*2*)  *Law of the Road.  Due Care.  Motor Vehicles.*

While a driver of a motor vehicle is bound to take notice that a street car has stopped to allow passengers to alight, and to so conduct his vehicle as not to run down persons who have so alighted, that is not a duty imposed by the statutes prescribing the law of the road, but is the duty of using due care.

(*3*)  *Same.*

The driver of a motor vehicle in passing an electric car irrespective of which side he passes, is held to one degree of care, that of due care, proportionate to the conditions existing at that time and place.

(*4*)  *Motor Vehicles.  Negligence.  Passing Electric Car.  Duty to Passenger Alighting.*

Although a person alighting from an electric car, sees an automobile approaching from the rear, unless it is so close that it could not be stopped by the exercise of ordinary care, he has the right to assume that its driver will not run it over him.

TRESPASS ON THE CASE for negligence.  Heard on exceptions of defendant, and sustained.

DUBOIS, C.  J.   This is an action of trespass on the case for personal injuries sustained by the plaintiff through an accident wherein he was thrown down and run over by the automobile of the defendant shortly after leaving an electric car whereon he had been a passenger.  A trial of the case in the Superior Court resulted in a verdict for the plaintiff,

whereupon the defendant made his motion for a new trial, which was denied by the justice of said court who presided at the trial. To the denial of his motion for a new trial the defendant duly excepted and has prosecuted in this court his bill of exceptions, including said exception and others taken in the course of said trial and now relies upon the four following: "Seventh: To the ruling of the trial justice refusing to instruct the jury in accordance with the defendant's second request, which said request is to be found on page 478 of said transcript, which ruling was erroneous in that the defendant was entitled to have the jury so instructed,—to which ruling the defendant duly excepted as appears on pages 476 and 478 of said transcript; Eighth: To the following portion of the court's charge to the jury: 'Now, gentlemen, we will take up the count which claims that this defendant should have driven his car on the opposite side of the electric car.' Under the law of this State, 'Every person traveling with any carriage or other vehicle, who shall meet any other person so traveling on the highway, or bridge, shall seasonably drive his carriage or vehicle to the right of the center of the traveled part of the road, so as to enable such person to pass with his carriage or vehicle without interference. Every person traveling with a carriage or other vehicle, who shall overtake any other person so traveling on any highway, or bridge, shall pass on the left side thereof, and the person overtaken shall, as soon as practicable, drive to the right so as to allow free passage on the left.' And under Section 12 of the Automobile Laws there is this provision: 'When two vehicles meet on a public highway the operator of each vehicle shall seasonably keep to the right to pass without interference; and when a vehicle overtakes another, the one in the rear shall give timely warning as aforesaid and shall pass on the left.' That applies, in my opinion, to a vehicle or automobile approaching an electric car. If they desire to pass the electric car, it is my opinion, and I so charge you, that it is their duty to pass upon the left of that car, having due regard to the people

who may be coming on the right hand side in an opposite direction. If they fail to do that it does not follow, as a matter of law, that they are guilty of negligence. If they fail to do that and go on the right hand side of the car, they are held to a greater degree of care than they would be if they had gone on the left hand side of the car, as the law provides,' which said charge was erroneous in that there was no requirement of law which required the defendant's automobile, at this time and place, to pass to the left of the electric car from which the plaintiff alighted,—to which said portion of said charge the defendant duly excepted, as appears on page 476 of said transcript; Ninth: To the following portion of the court's charge to the jury: 'If you should find that this was a closely built up section, from the evidence, if by reason of the fact that the houses on one or both sides were devoted to business purposes, or there were dwelling-houses averaging less than one hundred feet apart, why, the rate of speed allowable or permissible there would not be greater than fifteen miles per hour,' which said charge was erroneous in that there was no testimony, which showed that the statute therein referred to was applicable to this case,—to which said portion of said charge the defendant duly excepted, as appears on pages 476 and 477 of said transcript," and "Tenth: To the denial by the trial judge of the defendant's motion for new trial, which denial was clearly and plainly erroneous in that under the special findings of the jury taken in connection with the evidence the plaintiff was not in the exercise of due care, and assumed the risk of injury,—to which denial the defendant duly excepted."

(1)　　The seventh exception aforesaid was taken to the refusal of the court to instruct the jury as follows: "There is no requirement of law which required the defendant's automobile, at this time and place, to pass to the left of the electric car from which plaintiff alighted." In the third count of his declaration the plaintiff avers *inter alia* that on the eighth day of September, 1909, the defendant by his agent

and servant operated a certain automobile in the city of Providence; that on said day the plaintiff was a passenger upon a street car proceeding along Union avenue, which car stopped for him to alight therefrom at a white post near Webster avenue, that he did alight from said car and that while he was crossing Union avenue toward its northerly sidewalk, the defendant's automobile managed by his agent overtook said car, and that it became and was the duty of the defendant, his agents and servants to pass said street car on the left side thereof, as he safely could, so that the plaintiff would not be run into while he was in the exercise of due care. Yet the defendant attempted to and passed said street car on the right hand side thereof instead of the left and then and there ran into the plaintiff while crossing said street in the exercise of due care. This allegation is based upon the assumption, that the law of the road, and the statute relating to automobiles, impose upon persons, operating automobiles when overtaking and desiring to pass electric cars, the duty of passing the overtaken car upon the left side thereof. This construction of the statutes was adopted by the justice of the Superior Court who presided at the trial and was included in that portion of his charge to the jury which forms the basis of the defendant's eighth exception, hereinbefore set forth. The law or rule of the road, above alluded to, is contained in Gen. Laws, R. I., 1909, cap. 87, § 1, and reads as follows: "Section 1. Every person travelling with any carriage or other vehicle, who shall meet any other person so travelling on any highway or bridge, shall seasonably drive his carriage or vehicle to the right of the center of the travelled part of the road, so as to enable such person to pass with his carriage or vehicle without interference or interruption. Every person travelling with any carriage or other vehicle who shall overtake any other person so travelling on any highway or bridge shall pass on the left side thereof, and the person so overtaken shall as soon as practicable drive to the right so as allow free passage on the left." And the law prescribing the duty of

operators of motor vehicles in the premises is contained in said General Laws, Chapter 86, and in that portion of Section 12 thereof, which reads as follows: "Whenever two vehicles meet on a public highway, the operator of each vehicle shall seasonably keep to the *right* so as to pass without interference. Whenever one vehicle overtakes another, the one in the rear shall give timely signal as aforesaid" with his bell, horn, or other device for signalling "and shall pass on the *left*, and the operator of the one in front shall seasonably bear to the right so as to allow free passage on the left."

The seventh and eight exceptions may well be considered together for they relate to a refusal to charge the jury in a certain definite manner, and to a charge which not only did not include the instruction prayed for but was diametrically opposed to it. In our opinion the prayer for instruction should have been granted, and the charge given is objectionable because the rule of the road could not properly be invoked in the case at bar. If the rule of the road had any application at all it must have been with reference to the street car or the people thereon, but the plaintiff at the time of the accident had ceased to be a passenger on the car and there was no interference with the car or collision in which it and the automobile of the defendant were involved. The plaintiff was not injured in consequence of the neglect of any duty which the defendant owed to the car or its occupants. Of course the defendant was bound to take notice of the fact that a street car had stopped to allow passengers to alight and to so conduct his vehicle as not to run down persons who had so alighted, but that is not a duty imposed by the statutes hereinbefore referred to as prescribing the rule of the road. If a duty was violated it is the duty of using due care under all the circumstances of the case. The duty of using due care is not of statutory origin. The duty of using due care for one's self arises out of one of the first laws of nature: that of self preservation. The duty of using due care not to injure another or his property arises out of the exigencies of society and its

observance is necessary for the preservation thereof. The
maxim "*Sic utere tuo ut alienum non laedas,*" expresses it,
and to the enforcement of the maxim much of the police
power of the State is exercised. The charge of the court
was that the statutes aforesaid in his opinion, applied to a
vehicle or automobile approaching an electric car, and that
if they desired to pass the electric car (which they had
overtaken) it was their duty to pass upon the left of that
car, having due regard to the people who may be coming
on that side in an opposite direction. He qualified the above
to this extent: "If they fail to do that it does not follow,
as a matter of law, that they are guilty of negligence. If they
fail to do that and go on the right hand side of the car, they
are held to a greater degree of care than they would be if
they had gone on the left hand side of the car, as the law
provides. In other words, the one who violates the law of

(3) the road by driving on the wrong side assumes the risk of
such experiment and is required to use greater care than as
if he were on the right side." The qualification was also
erroneous; they would not be held to a greater degree of
care as being upon the wrong side of the road, in fact the
degree of care required was exactly the same on the one side
of the car as upon the other and that was due care, care
proportionate to the conditions existing at that time and
place. The judge further instructed the jury as follows:
"But if you should find, gentlemen, that notwithstanding
the fact that he went on the right hand side of this car
that he did exercise that care which an ordinarily careful
and prudent man would exercise under all the circumstances
of this case, then, gentlemen, your verdict should be for the
defendant." This portion of the charge was correct, but
in our opinion it was not introduced for the purpose of
nullifying the instructions which had just preceded the same,
and was not calculated to correct the erroneous impression
that must have been conveyed to the minds of the jurors
by the preceding portion of his charge. Moreover, at the
conclusion of the charge the judge explicitly said: "The

defendant's requests I have covered, all but number two, and to that I give Mr. Vincent an exception." This refusal to charge, as requested by the defendant, makes it evident that the judge persisted in his view of the applicability of the rule of the road to the circumstances of the case and also shows that he did not intend to modify the instructions he had given relating to the same. We are of the opinion that the charge and refusal to charge constitute reversible error and therefore sustain the defendant's seventh and eighth exceptions. We do not find that the court erred in that portion of his charge which is the subject of the defendant's ninth exception. There was some testimony tending to prove that the section, wherein the accident occurred, was closely built up. The charge as given was correct and left the fact to be determined by the jury from the evidence. The defendant's ninth exception is therefore overruled. The defendant's tenth exception must also be overruled.

The defendant's motion for a new trial was based upon the following grounds:

"First. Because the verdict is against the law and the evidence, and the weight thereof.

"Second. Because the special findings of the jury are inconsistent with the general verdict.

"Third. Because the second special finding of the jury, taken in connection with the first special finding, is inconsistent with the general verdict.

"Fourth. Because the special findings of the jury show that the plaintiff was not in the exercise of due care.

"Fifth. Because the special findings of the jury show that the plaintiff, in attempting to cross the street in front of the automobile, assumed the risk of injury."

The verdict referred to reads as follows: "The jury find that the Defendant is guilty in manner and form as the Plaintiff has in his declaration thereof complained against him and assess damages for the Plaintiff in the sum of $7,500.

"The jury further find specially: (1) The Plaintiff immediately before he stepped onto the running board did look back along Union Avenue to the drug store, at the corner of Union and Priscilla Avenues.

"(2) At the time when the Plaintiff was about to step down upon the running board and when he says he looked back along Union Avenue to the drug store, at the corner of Union and Priscilla Avenues, the automobile of the defendant was on Union Avenue, between Priscilla Avenue and the place of the accident."

It appears from the evidence that the distance from the place where the plaintiff looked, immediately before he stepped onto the running board of the car, to the drug store, at which he then looked, is two hundred and thirty-six feet. It also appears that Union avenue, between Priscilla and Webster avenues is fifty feet wide. It further appears that the width of the sidewalks on the northerly and southerly sides of Union avenue, between the streets mentioned, is ten feet, that the width of Union avenue between the southerly sidewalk and the southerly rail of the car track is eight feet, and between the northerly sidewalk and the northerly rail of the car track is seventeen feet. What the plaintiff's angle of vision was when he looked, and what obstruction the car presented to his vision do not appear. There was testimony concerning the presence of another car following the one from which the plaintiff alighted, and that the automobile of the defendant passed that car on its left side and proceeded on the southerly side of Union avenue for some distance until it crossed over to pass the first car on its right side. Exactly where the second car was when the plaintiff looked towards the drug store does not appear, nor does it clearly appear where the defendant's automobile then was. We cannot say from the evidence that the special findings are inconsistent with the general verdict. The defendant's automobile may have been on the southerly side of Union avenue between Priscilla avenue and the place of the accident and still not have been in sight of the plaintiff.

Or the plaintiff may have been mistaken when he says that he did not see the automobile. But even if he had seen it, unless it was then so close that it could not have been stopped by the exercise of ordinary care and prudence on the part' of its manager, he would have had the right to assume that the person in charge of it, would not run it over him. It is not claimed and it cannot be inferred from the evidence that he was desirous of committing suicide; furthermore, as it does appear that the automobile was lighted at the time of the accident the light should have enabled the chauffeur to have seen the plaintiff in the road, in time to stop or avoid hitting him, unless the vehicle was rounding a curve in passing the rear end of the car from which the plaintiff had alighted in which case the light would have been of little assistance to the driver of the automobile.

As the defendant's seventh and eighth exceptions have been sustained as aforesaid, the case is remitted to the Superior Court for a new trial.

*Frank Healy, George T. Marsh,* for plaintiff.
*Vincent, Boss & Barnefield,* for defendant.